No. 32,688

S. M. TERBOVICH, Special Administrator of the Estate of Ben Nomaeko (also known as Bennie Nomaeko), Deceased, *Appellant*, v. MICHAL (MICHAEL) KOLINDA and MALWINA KOLINDA, *Appellees*.

(58 P. 2d 70)

Opinion filed June 6, 1936.

*James M. Meek* and *S. M. Terbovich*, both of Kansas City, for the appellant.

*J. Earl Thomas* and *Tudor Nellor*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was a foreclosure action brought by a special administrator by direction of the probate court against the regular administrator of an estate and his wife to obtain a personal judgment against them on their note for $1,500, given to the deceased, and to foreclose the mortgage given by them to the deceased on real property to secure the payment of the note.

The answer admitted the execution of the note and mortgage and alleged that six payments had been made by them to the deceased, giving the dates and amounts paid at the different times, which made a total of $1,325, and also admitted an indebtedness of a balance of $175 and interest and offered to confess judgment for such balance and interest. A reply in the form of a general and special denial was filed by the plaintiff. The answer and reply were each verified.

A trial was had by the court without a jury and the court filed a memorandum opinion finding the unpaid balance was $200 and interest, and rendered judgment in favor of plaintiff and against both defendants for $200 as balance of the principal, and $71 interest, or $271, and ordered foreclosure of the mortgage. A motion for judgment for plaintiff and a motion for a new trial were overruled, and plaintiff appeals.

The appellant insists that the evidence does not support the findings, conclusions or judgment of the trial court. The evidence in chief of the plaintiff consisted mainly of the two exhibits attached to the petition, the note and the mortgage, the latter being duly recorded and the former bearing or showing no endorsements whatever. The evidence of the defendants had necessarily eliminated therefrom any and all conversations and transactions had by either of the defendants with the deceased as to payments, if any, made by them, or either of them, to the deceased mortgagee on the note.

A daughter of the defendants testified that she saw her mother give the deceased $300 to apply on the note, but could not give the date of such transaction. A garage man said the deceased three times left money with him to keep for him, and on one of those occasions the deceased said his landlady gave it to him. The deceased was a first cousin of the defendant husband and roomed at the home of the defendants, paying $5 a month for his room.

One witness who knew that the defendants owed the deceased, having been told of it by the defendant husband, asked the deceased

about a month before his death "if he got squared out with Mike," and the deceased replied, "Well, all but about two hundred dollars."

Both defendants testified, the husband about his earnings and income and his giving the same to his wife for her to care for or keep and his making payments to the bank on the $1,700 first mortgage for a while at $44.50 per month, and later $25 per month and getting receipts for such payments, and about his owning another house than that in which they lived, for the rent of which they received $25 a month, but later only $15 per month. The defendant wife testified about working and earning a regular salary, as she said her husband, son and daughter also did; that they all turned their earnings over to her and she had charge of paying the bills, part on the first mortgage at the bank, the purchase of a car and other uses. The daughter had previously testified as to the amount of the earnings of all four of them for the past three years amounting to nearly or about $4,000 a year, which she said was all turned over to her mother, and they each received some spending money from time to time.

The rebuttal consisted of the testimony of an officer of the bank where the deceased kept an account, giving the amounts of deposits, interest and withdrawals with the dates of each, also the payments made to the bank by the defendants on the first mortgage of $1,700 held by the bank.

There was also introduced in rebuttal a copy of the pertinent parts of the inventory and appraisement in the estate of deceased, which was verified by the affidavit of the defendant Mike Kolinda, the administrator, which inventory showed, among other things, three Postal Savings certificates of $500 each and the promissory note of the defendants, date January 26, 1932, for $1,500, and under the heading "value endorsements" the word "none," and under the words "appraisal val." the figures "$1,500." The verification of the inventory by the defendant husband, as administrator, closes as follows:

". . . that it contains a true statement of all of the estate and property of said deceased which has come to my knowledge and particularly of all moneys, bank bills and other circulating medium belonging to said deceased, and all just claims of said deceased, against myself and all other persons according to the best of my knowledge. So help me God."

One witness was used in surrebuttal, who was a restaurant keeper, and he testified that the deceased at one time asked him what one would have to do when his mortgage expired.

This case is quite unusual in that there is absolutely no conflict in the testimony, no contradiction by one witness of the testimony given by any other witness. Each piece of testimony may tend to prove or disprove the one matter in issue, if it is given credence. The trial court, in its memorandum opinion, specifically gave credence to the testimony of the members of the family of defendants who testified and the witness who said the deceased told him that the debt of the defendants had been squared all but about $200. Aside from the oral testimony the record contains the documentary evidence which speaks for itself and calls for explanation in some particulars, by inference or otherwise. The deceased and the defendants were foreigners from Poland, having lived here about fifteen years, and doubtless were only partially accustomed to our usual business methods.

One of the outstanding facts which must be given consideration in the claim of payments having been made on this note, is the fact that no endorsement was ever made on the note of the making of any payment thereon, and no receipt was offered in evidence for any payments made, although the defendants were accustomed to getting receipts from the bank for payments made there on the $1,700 note during the same period generally. But as against this, it may be said this was all in the family, the holder of the note being a cousin of the defendants and rooming at their home.

Another piece of documentary evidence, which is hard to overlook, is the inventory filed with the affidavit, made by the first-named defendant as administrator of the estate of the deceased, in which he lists the note as a $1,500 asset of the estate with no endorsements, which the appraisers found to be worth $1,500, and which in his affidavit was classed by him as a just claim of the deceased against himself. Of course there might be a good reason or excuse why such documents existed as they did, but we are not advised of any oversight, reason or excuse for such condition.

As against this almost irresistible documentary testimony we are willing to concur with the trial court in accepting the positive testimony of the daughter as to seeing and hearing her mother give the deceased $300 to apply on this note, and as she was unable to say when this occurred we will give it the benefit of doubt by crediting it as of August 26, 1933, when the defendants claim in their answer a payment of that amount was made.

Much evidence was introduced showing the earnings and income

of the defendant's family, and, therefore, the ability of the defendants to pay. The trial court mentioned this as an element in the discretion of the court to show such ability, but ability to pay is regarded as only one step toward payment. It is said in 48 C. J. 720:

"The admissibility of evidence as to the debtor's financial condition has been held to be within the reasonable discretion of the trial court. Although it has been held that evidence of the debtor's ability to pay is not admissible to show payment, there is substantial authority that evidence tending to show that defendant had money from which a claimed payment might have been made is admissible to show that fact."

In 21 R. C. L. 121 it is said:

"Evidence of the financial condition of either the debtor or the creditor may, by reason of the circumstances, have some probative force on the question of the payment of an indebtedness, or it may be so remotely connected with that question as to be almost or entirely devoid of probative value . . . Experience is not sufficiently uniform to raise a presumption that one who has the means of paying a debt will actually pay it. Accordingly, it is held that the fact that a debtor has had such means is not admissible in the first instance as tending to show that the debt has been paid."

In general such evidence is admissible at the discretion of the trial court not to actually show payment of the debt, but to show the credibility of debtor's witnesses testifying as to payments having been made. Aside from the testimony of the daughter as to the payment of $300, we have no evidence of specific and definite payments. The evidence of such financial ability was therefore admissible in the discretion of the trial court and does show the ability, but we are unable to make it applicable to any definite act of payment other than the one above mentioned.

From the memorandum opinion of the trial court we are certain much dependence was placed upon the testimony of the witness who related a conversation he had with the deceased where he asked the deceased "if he got squared out with Mike," and the deceased answered, "Well, all but about two hundred dollars."

It is said in 1 Greenleaf on Evidence, 16th ed., page 333:

"With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him."

In 3 Jones Commentaries on Evidence, 2d ed., 1969, it is said:

"Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by omission or change of words, to convey a false impression of the language used."

In 22 C. J..289 it is said:

"It is a common experience of those dealing with human testimony that conversations are very imperfectly remembered, particularly where the exact language used is sought to be recalled after a considerable lapse of time, where the words spoken were of indifferent interest to the hearer, so that he would have no occasion to treasure them up in his memory, or where the statement was made in loose, casual, or random conversation."

(See, also, *Mentzer v. Burlingame*, 85 Kan. 641, 118 Pac. 698; and *James v. Lane*, 103 Kan. 540, 175 Pac. 387.)

We think this is too important a matter to rest almost entirely upon the recollection of one person of a conversation containing an admission of a deceased person, where the possibilities and opportunities are great that the question or answer might not have been fully understood or the exact words remembered. In the language of the renowned author above quoted, we think verbal admissions ought to be received with great caution, especially where they are not supported by other corroborating facts or circumstances.

For these reasons, and especially because of the unexplained documentary evidence entirely to the contrary, we think the evidence is not sufficient to support a finding of payment of the note in question beyond the $300 item, and that judgment should be rendered for the plaintiff for the full amount of the note less $300 paid August 26, 1933, with interest calculated according to the terms of the note.

The judgment is reversed with directions to render judgment as indicated in the opinion.